UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
EDWIN DAVIS,

      Petitioner,

    **MEMORANDUM & ORDER**

-against-

    04 CV 0085 (RJD)

UNITED STATES OF AMERICA,

      Respondent.
----------------------------------------------------X
DEARIE, Chief Judge.

 Petitioner Edwin Davis seeks relief from his conviction and sentence pursuant to 28 U.S.C. § 2255, and moves for release pending adjudication of his petition. For the reasons set forth below, the applications are denied and the petition dismissed.

## BACKGROUND

 A jury convicted petitioner of robbery and robbery conspiracy in violation of the Hobbs Act, 18 U.S.C. §1951, for his participation in the robbery of a supermarket located at 108-16 Liberty Avenue, Queens, New York. In addition to the testimony of the investigating case agent and arresting officer, the trial evidence included testimony from three of petitioner's accomplices (Marlon Bennett, Nigel Belgrave and Trevor John) and the post-arrest statement in which petitioner admitted to the crime.

 On his direct appeal, petitioner challenged this Court's determination that he knowingly waived his Miranda rights and argued that absent his statement, the remaining evidence was legally insufficient. He also challenged the guideline calculations upon which his 121-month

1

sentence was based. See Brief for Deft-Appellant, 2002 WL 32305000 (Feb. 22, 2002). The Second Circuit rejected each of these claims and affirmed the conviction and sentence. United States v. Davis, 48 Fed.Appx. 8, 9, 2002 WL 31218263,*1 (2d Cir. Oct 2, 2002). Petitioner's conviction became final 90 days later, when his time to petition for a writ of certiorari expired.

On the day the statute of limitations was to expire, petitioner filed his section 2255 papers, arguing that counsel was ineffective for having allegedly failed to challenge at trial or on appeal the government's proof and the Court's instructions on the interstate commerce element of the Hobbs Act counts, and for having allegedly failed to object at trial or on appeal to the testimony of accomplice witness Belgrave. In a motion to supplement filed nearly four months later, on April 24, 2004, petitioner seeks leave to amend to include in his ineffectiveness claim the allegation that counsel also failed to object at trial or on appeal to the government's alleged failure to inform him, at the time of his arrest, of his rights under the Vienna Convention on Consular Relations.

In a second motion for leave to amend filed August 2, 2004, petitioner seeks to avail himself of post-Apprendi changes in sentencing law.

## DISCUSSION

### I. The Ineffectiveness Claims

The gravamen of petitioner's initial, timely petition is that the Court lacked jurisdiction to hear and enter judgment in his case because the government failed to establish, beyond a reasonable doubt, that the robbery of the grocery store on Liberty Avenue affected interstate commerce within the meaning of the Hobbs Act. The claim is frivolous, warranting the brief discussion we afford it below only because it touches upon a subject of such paramount importance as the Court's jurisdiction.

It also exemplifies, unfortunately, what is proving to be the 2255 tactic of choice in much

2

of the Court's 2255 docket, namely, the ferrying of stale, meritless claims across the obstacles of time and valid procedure by disguising them as attempted reproaches against counsel. Instead of signaling, as they should, a bona fide objection to the quality of counsel's representation, the words "ineffective assistance" are tending to serve, as they do in this case, merely as the ticket of admission to section 2255 proceedings.[1] The result is not only needless consumption of judicial resources to discern the real claims shoehorned into the idiom of ineffectiveness, but an onslaught of the kind of shotgun, afterthought litigation evident in this petition.

A. <u>Petitioner's Jurisdictional Claim</u>

The Hobbs Act prohibits robberies that "in any way or degree" obstruct or affect commerce, 18 U.S.C. § 1951 (a), language that, as the Circuit has held, requires proof of only a "<u>de minimis</u>" effect on commerce. <u>United States v. Farrish</u>, 122 F.3d 146, 149 (2d Cir.1997), <u>cert. denied</u>, 522 U.S. 1118 (1998). <u>Accord</u> <u>United States v. Parkes</u>, 497 F.3d 220, 230 (2d Cir.2007) ("a very slight effect" suffices, even if the effect is "postponed" and "indirect" or merely "potential or subtle") (internal quotations and citations omitted), <u>cert. denied</u>, 552 U.S. 1220 (2008). This "possibility or potential of an effect on interstate commerce," <u>United States v. Jones</u>, 30 F.3d 276, 285 (2d Cir. 1994), is satisfied in the small grocery-store setting as long as the robbery "impairs the ability of the local enterprise to acquire—whether from out-of-state or in-state suppliers—goods originating out-of-of-state." <u>Elias</u>, 285 F.3d at 189 (2d Cir.) (internal citation omitted), <u>cert. denied</u>, 537 U.S. 988 (2002).

---

[1] Petitioner obviously understands that section 2255 cannot be used either to re-litigate issues that he raised on appeal, <u>United States v. Pitcher</u>, 559 F.3d 120, 123 (2d Cir.2009), or to raise for the first time issues that he *could* have raised on appeal but did not, <u>United States v. Frady</u>, 456 U.S. 152, 165 (1982), but that claims for ineffectiveness assistance of counsel "may be brought . . . under § 2255 whether or not the petitioner could have raised the claim on direct appeal." <u>Massaro v. United States</u>, 538 U.S. 500, 504 (2003).

3

Under these authorities, petitioner's quarrels with the record are trivial. The evidence established beyond a reasonable doubt the required de minimis effect: the grocery store that petitioner robbed, incorporated as Varsha Foods, was a member of the Key Food Stores Cooperative and through the cooperative's distribution chain, stocked and sold numerous products, including diapers, ketchup and bleach, that originated out-of-state. If more were needed, the record also established that the robbers took between $18,000 and $23,000, an injury that obviously "impair[ed] the ability of [the market] to acquire—whether from out-of-state or in-state suppliers—goods originating out-of-of-state." Elias, 285 F.3d at 189.[2]

The ineffectiveness claim premised upon the jurisdictional claim likewise fails, for petitioner cannot show that "the result of the proceeding would have been different" within the meaning of Strickland, 466 U.S. 668, 694 (1984), had counsel litigated the jurisdiction element differently.[3]

---

[2] Petitioner's related claim that the Court's instructions somehow allowed the jury to convict him whether or not the government had proven the interstate commerce element hardly requires mention. The instructions, which speak for themselves, plainly conform to the controlling circuit authorities cited above.

[3] Petitioner also lodges a series of semantics-based complaints about immaterial matters, and several sweeping, unsupported assertions. In the first group are his assertion that the Court constructively amended his indictment when it once referred inadvertently to the Key Food supermarket "in Queens, New York and Brooklyn" while reading the indictment during the charge, T. 1064, his claim that the indictment erroneously alleged that the robbery occurred at a Key Food Supermarket "when in fact there was no Key Food robbery at all," Pet. at 10, and his further claim that counsel "knew that there never was a robbery at the Key Food Distribution Corporation in Brooklyn." Pet. at 14. These are frivolous assertions because the location of the robbery was not in dispute. In the second group are petitioner's allegations that counsel "unreasonably permitted the government prosecutors to obstruct justice" and that counsel interfered with the effort of investigators to interview the victims and others who "would have provided helpful testimony" on his behalf. Pet. at 14. Petitioner does not name the witnesses, hint at what they would testify to, or offer any supporting particulars whatsoever. These allegations, therefore, cannot support a Strickland-based claim for relief.

B.  The Claims Relating to the Testimony of Nigel Belgrave

Petitioner seeks to fault counsel "for allowing into evidence the inadmissible statements of the cooperating government informant Nigel Belgrave as a co-conspirator's statements." Pet. at 2. Liberally read, the petition appears to raise both a claim that the conspiracy conviction is invalid on the theory that petitioner cannot be guilty of conspiring with government-affiliated parties only (the "conspiracy claim"), see Pet. at 12, and that Belgrave's testimony was in whole or in part inadmissible under Federal Rule of Evidence 801(d)(2)(E) (the "statements claim").

Once again, petitioner's assertions have little to do with the conduct of counsel. This section of his allegations advance, at best, a pair of stale, procedurally barred claims about utterly routine elements of the law (conspiracy fundamentals and the admissibility of co-conspirator statements) that, if that had any merit, should have been raised long ago. But they do not. On the conspiracy claim, petitioner is incorrect as a matter of fact. "Informant" is petitioner's term but Belgrave was not an informant or undercover; he was merely an accomplice who elected to cooperate and testify, so the basic conspiracy law requirement that petitioner have entered into an agreement with at least one non-government-affiliated party was satisfied. The statements claim defies comprehension. Belgrave testified in person, so 801(d)(2)(E) is not applicable to Belgrave's "statements." In any event, where the rule applies, it *authorizes* admission, so how it might have been the source of a defense objection during Belgrave's testimony is not readily apparent nor a matter that petitioner has addressed.

C.  The Vienna Convention

A citizen of Trinidad in this country illegally when he robbed the Queens supermarket, petitioner seeks leave to supplement his petition with a claim alleging that the government failed to inform him at the time of his arrest of his rights under the Vienna Convention on Consular

5

Relations, and that his counsel was ineffective for not addressing the matter in the trial or appellate court. Assuming that this untimely claim relates back to the original, timely petition (filed on the day the statute expired), and further assuming, for the sake of argument, that the government failed to advise petitioner of his Vienna Convention rights, this claim is nevertheless meritless.

Article 36(1)(b) of the Vienna Convention "provides that the authorities of a 'receiving state'-here, the United States-shall, without delay, inform any detained national of his right to have the 'consular post' of a 'sending state'-here, [Trinidad]-notified of his detention." United States v. Bustos De La Plava, 268 F.3d 157, 163 (2d Cir.2001) (citing Vienna Convention, art. 36(1)(b) 21 U.S.T. 77, 596 U.N.T.S. 261). But this provision "does not create any fundamental rights," De La Pava, 268 F.3d at 165, and a violation of the provision is not grounds to dismiss an indictment. Id. Petitioner, therefore, cannot show that counsel's alleged failure to invoke the provision caused Strickland prejudice.[4] Leave to amend to add a Vienna Convention claim is therefore denied.

---

[4] As Circuit Judge Raggi explained during her days on the district court,

> Consular notification generally serves to ensure that a foreign national charged with a violation of American law is visited by an official representative of his native country who can explain to him his rights as a criminal defendant in the United States, most notably his right to legal counsel and his right to remain silent ... Of course, once defense counsel enters a notice of appearance, he assumes full responsibility for safeguarding these and any other legal rights for a defendant. Thus, whatever obliga-tions the Vienna Convention may put on federal officials to give consular notification when a foreign national is arrested, a defense attorney cannot be labeled ineffective for failing to advise his client of the right to speak to a diplomatic official who could do no more to protect his rights than counsel himself.

United States v. Arango, 1999 WL 1495422, *3 (E.D.N.Y. Dec.29, 1999) (RR).

## II. The Sentencing Claim

In a second motion for permission to supplement his original 2255 papers, petitioner argues that, because his sentence of 121 months was based in part on facts found by the Court by a preponderance of the evidence rather than by the jury, the sentence is invalid under Blakely v. Washington, 542 U.S. 296 (2004). (The Court will assume that were petitioner to file additional papers he would also seek to rely on United States v. Booker, 543 U.S. 220 (2005)).

Booker and Blakely, however, were issued after petitioner's conviction became final, and have been held to be inapplicable retroactively on collateral review. Green v. United States, 397 F.3d 101 (2d Cir. 2005); Carmona v. United States, 390 F.3d 200 (2d Cir. 2004). Leave to amend to add a Booker or Blakely claim is therefore denied.

## CONCLUSION

The application for relief under 28 U.S.C. § 2255 is denied, each of the two motions for leave to supplement the petition is denied, and the petition is dismissed. Petitioner's application captioned "motion for release pending habeas corpus" is also denied. Because petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability will not issue.

SO ORDERED.

Dated: Brooklyn, New York
July 30, 2010

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge